UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GWEN FUMIKO TAKETA,<br><br>    Debtor. | Case No. 09-00024<br>Chapter 7 |
| SHEILA SCHNEIDERMAN,<br><br>    Plaintiff,<br><br> vs.<br><br>GWEN FUMIKO TAKETA,<br><br>    Defendant. | Adv. Pro. No. 09-90012<br><br><br><br><br><br>Re: Docket No. 1 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The trial of this adversary proceeding was held on November 4, 2009. Joseph A. Gomes represented plaintiff and Steven Guttman and Miriah Holden represented defendant. Based on the evidence, I make the following

**FINDINGS OF FACT**

1. In 2003, plaintiff Sheila Schneiderman worked as a teacher and tutor in the Hawai'i prison system. One of her students was an inmate named Clarence Freitas. Mr. Freitas became, in Ms. Schneiderman's words, her "significant other."

2. Defendant Gwen Taketa is a social worker. During 2003, she worked for a nonprofit agency as an employment specialist. She helped find jobs for inmates who were eligible for work furlough programs or for release on probation or parole. One of her clients was an inmate named Peter Estores.

3. Mr. Freitas and Mr. Estores were friends. In 2003, both were eligible for work furlough. Mr. Estores had work experience in construction and carpentry.

4. While Ms. Taketa was helping Mr. Estores find a work furlough job, Mr. Estores suggested that the two of them should do "side jobs" together. Mr. Estores proposed that Ms. Taketa form a company to enter into small construction contracts which Mr. Estores could complete. After thinking about it, Ms. Taketa agreed to this proposal. She thought that she might be able to help more inmates in this fashion and that she might also make a profit for herself. (The record does not reveal whether Ms. Taketa disclosed this to her employer or obtained her employer's approval.)

5. Ms. Taketa had no experience in construction or related fields and did not have a contractors' license.

6. Mr. Freitas learned that Ms. Schneiderman wanted to renovate the kitchen in her condominium. Mr. Freitas was interested because he hoped to do some of the work, with his friend, Mr. Estores, as part of his own work furlough.

U.S. Bankruptcy Court - Hawaii   #09-90012   Dkt # 73   Filed 11/23/09   Page 2 of 12

Mr. Freitas set up a meeting at the condominium on October 31, 2003. Mr. Frietas, Mr. Estores, Ms. Schneiderman, and Ms. Taketa attended. This was the first time that Ms. Schneiderman and Ms. Taketa ever met or had any contact.

7. Mr. Estores did most of the talking during the meeting. He promised to replace the particleboard cabinets with solid wood cabinets and the formica countertops with granite. He promised Ms. Schneiderman that the job would be finished in two weeks and that the result would be beautiful.

8. Mr. Estores and Mr. Freitas planned to work together on the project. Mr. Frietas would help with the demolition and the purchase of appliances.

9. Ms. Taketa said little during the meeting. She did not tell Ms. Schneiderman that she had a contractors' license or that she had any relevant experience and made no other affirmative misrepresentations. By the same token, she did not tell Ms. Schneiderman that she did <u>not</u> have a contractors' licence or any relevant experience. Ms. Taketa felt reluctant to take on the job because she had expected that she and Mr. Estores would start with smaller projects and she was not sure that they were ready for such a large job. Ms. Taketa did not tell Ms. Schneiderman of her reluctance.

10. Ms. Schneiderman never asked any questions or made any other inquiry about whether Ms. Taketa had a contractors' license or any relevant

3

U.S. Bankruptcy Court - Hawaii   #09-90012   Dkt # 73   Filed 11/23/09   Page 3 of 12

experience. She decided that Ms. Taketa and Mr. Estores were trustworthy based on the general impression she got at the meeting. She was probably also influenced by Mr. Freitas' friendship with Mr. Estores and the fact that the project would provide work for Mr. Freitas, her significant other.

11. Ms. Taketa brought to the meeting a blank construction contract which she had obtained on the internet. The contract said that the contractor was G Builders, a sole proprietorship owned by Ms. Taketa. Ms. Taketa did not register the name "G Builders" until a few days after the meeting. During the meeting, Ms. Taketa completed the blanks in the contract as Mr. Estores directed. Ms. Schneiderman read the contract, and she and Ms. Taketa signed it.

12. When Ms. Taketa signed the contract, she sincerely believed that Mr. Estores would do the work as promised, upholding her end of the bargain.

13. The total price for the project was $17,000.00. The contract provided that Ms. Schneiderman would pay the price in installments, with the last installment due after the work was finished. Ms. Schneiderman decided that it would be easier and simpler for her to pay the entire price before work began. She made the full payment of $17,000 on November 4, 2003. Ms. Taketa and Mr. Estores did not request or suggest that she do so. Ms. Taketa was surprised by Ms. Schneiderman's decision, but she accepted the payment anyway.

4

14.     Ms. Taketa testified that she did not keep any of the money and that she gave most of the rest to Mr. Estores to pay for materials and his labor. At trial, she testified that she also gave $1,800 to Mr. Freitas to buy appliances, but she did not mention this in her deposition. She could not corroborate any of this testimony, however, claiming that she had made all of the payments in cash and that her records were lost.

15.     Mr. Estores and Mr. Frietas began work on the project on or about November 5, 2003. (Ms. Taketa never personally did any physical work on the project.) They emptied the kitchen cabinets and drawers and piled the contents on the dining table and in a spare bedroom. They dismantled the sink, cabinets, and countertops. They placed a saw and other tools on the lanai and created a quantity of sawdust. They left the condominium in shambles, and never returned to do any more work.

16.     When Mr. Estores did not return, Ms. Schneiderman contacted Ms. Taketa to find out about the status of the work. Ms. Taketa put Ms. Schneiderman off.

17.     Ms. Taketa contacted Mr. Estores about the work. At first, Mr. Estores claimed that the person who had agreed to build the cabinets had not finished, but he refused to identify the person. Ms. Taketa never got a straight

5

answer from Mr. Estores about why he did not complete the project.

18. About fourteen months after the "two week" job was to have been finished, Ms. Taketa arranged for a man named "Mamala" or "Malama" to resume the job. Ms. Taketa paid him $800. She knew that this was not sufficient to pay for the rest of the work, but that was all she could afford. Ms. Schneiderman paid this man and others an additional $6,492.83 to finish the kitchen. The quality of the completed kitchen was not as Mr. Estores and Ms. Taketa had promised, because Ms. Schneiderman could only afford particleboard cabinets and formica countertops, not solid wood and granite as promised.

19. Ms. Taketa never returned any of the $17,000 which Ms. Schneiderman paid under the contract and never repaid any of the additional money which Ms. Schneiderman paid to complete the kitchen.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157 (b)(2)(I). Venue is proper.

2. Ms. Schneiderman's complaint asserts that the debt owed by Ms. Taketa to Ms. Schneiderman is not dischargeable in bankruptcy based on sections 523(a)(2)(A), 523(a)(4), and 523(a)(6).

U.S. Bankruptcy Court - Hawaii   #09-90012   Dkt # 73   Filed 11/23/09   Page 6 of 12

3. In order to prevail under section 523(a)(2)(A), the creditor must prove that the creditor's debt is "for . . . money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." To establish "false pretenses, a false representation, or actual fraud," the creditor must establish "(1) misrepresentation, fraudulent omission or deceptive conduct by a debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). When Congress used the term "actual fraud," Congress was referring to the general common law of torts. Field v. Mans, 516 U.S. 59, 71 n. 9 (1995).

4. Exceptions to discharge are narrowly construed. In re Hudson, 859 F.2d 1418, 1425 (9th Cir. 1988). The exceptions to discharge in section 523 are "strictly construed against the objecting creditor and liberally in favor of the debtor." Id. The creditor seeking to have the debt excepted from discharge has the burden of proof. In re Littleton, 942 F.2d 551, 554 (9th Cir. 1991).

5. Ms. Schneiderman bears the burden of proving "misrepresentation,

7

U.S. Bankruptcy Court - Hawaii   #09-90012   Dkt # 73   Filed 11/23/09   Page 7 of 12

fraudulent omission or deceptive conduct by a debtor." In this case, Ms. Taketa made no affirmative misrepresentations to Ms. Schneiderman. Her conduct was not "deceptive," because she neither said nor did anything that created a justifiable expectation on Ms. Schneiderman's part that Ms. Taketa had a contractor's license, had any relevant experience, or had no misgivings about entering into the contract.

6. An omission is "fraudulent" under section 523(a)(2)(A) only if the debtor owed a legal duty to disclose the omitted fact. <u>In re Eashai</u>, 87 F.3d 1082, 1089 (9th Cir. 1996). The common law of torts imposes a duty to disclose in the following circumstances:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated[:]

U.S. Bankruptcy Court - Hawaii   #09-90012   Dkt # 73   Filed 11/23/09   Page 8 of 12

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977). Ms. Schneiderman did not establish

U.S. Bankruptcy Court - Hawaii   #09-90012   Dkt # 73   Filed 11/23/09   Page 9 of 12

that any of these circumstances exist in this case.

7. Ms. Schneiderman argues that acting without a contractor's license, where one is required, constitutes an unfair and deceptive trade practice under chapter 480 of the Hawaii Revised Statutes. (Ms. Taketa does not dispute the fact that, when she signed the contract with Ms. Schneiderman, she became a "contractor" as defined in Haw. Rev. Stat. § 444-1 and was required to have a contractor's license under section 444-9.) No Hawai'i statute specifically so provides, and no Hawai'i published court decision goes that far. In <u>Eastern Star, Inc. v. Union Building Materials Corp.</u>, 6 Haw. App. 125, 133-4 (1985), the court affirmed the jury's determination that it is an unfair and deceptive trade practice to claim that one has a contractor's license when one does not. In this case, Ms. Taketa made no statement, one way or the other, about her license status.

8. Ms. Schneiderman also points out that Haw. Rev. Stat. § 444-25.5 requires licensed contractors to make certain disclosures to homeowners and provides that a violation of that section is an unfair and deceptive trade practice. Ms. Schneiderman argues that a person who should have a license but does not should be held to the same standard; in other words, if it is unfair and deceptive for a licensed person to withhold certain information from a homeowner, it is also unfair and deceptive for an illegally unlicensed contractor to withhold the same

10

information.

9.  In order to prevail, however, Ms. Schneiderman must also establish that an unfair and deceptive trade practice under the Hawaii Revised Statutes automatically qualifies as "false pretenses, a false representation, or actual fraud" within the meaning of 11 U.S.C. § 523(a)(2)(A).  The language of section 523(a)(2)(A) does not support this argument.  Congress intended to except from the discharge claims based on common law fraud.  Congress did not, however, intend to except from the discharge claims for violations of state statutes, even those that are intended to protect consumers.  "Section 523(a)(2)(A) was intended to codify case law as expressed in Neal v. Clark, [95 U.S. 704 (1878)] which interpreted 'fraud' to mean actual or positive fraud rather than fraud implied by law."  4 Collier on Bankruptcy ¶ 523.08[1][e] (15th ed. rev. 2009).

10. Ms. Schneiderman has not carried her burden of proof under section 523(a)(2)(A).

11. The complaint in this adversary proceeding (docket no. 2) also cites sections 523(a)(4) and (a)(6).  Ms. Schneiderman did not offer evidence or argument in support of those theories at trial.  Therefore, those theories are abandoned.

12. Nothing in this decision should be viewed as condoning or excusing

U.S. Bankruptcy Court - Hawaii   #09-90012  Dkt # 73   Filed  11/23/09   Page 11 of 12

Ms. Taketa's misconduct. Ms. Schneiderman undoubtedly is a victim, and Ms. Taketa is at least partly to blame for the expense, disappointment, and serious upset which Ms. Schneiderman has suffered. But the statute, not one's personal sense of right and wrong, states which debts are not discharged, and the statute does not except Ms. Taketa's debt to Ms. Schneiderman from the discharge.

The court will enter a separate and final judgment in favor of the debtor.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 11/23/2009